ALABAMA & V. RY. CO. *v.* WARE.

[92 South. 161. No. 22525.]

MASTER AND SERVANT. *Trail car held not an "appurtenance" of locomotive within federal Boiler Inspection Act.*

Where a railroad company has designed and constructed what is called a trail car, equipped with standard M. C. B. couplers and other standard equipment of a flat car, and of about the same width, length, and general appearance as an ordinary flat car, and also equipped with a long footboard on each side, with handholds above, for the use of employees in riding thereon,

which said car is used exclusively in switching cars or trains onto a transfer boat on the Mississippi river, and is intended to be placed between such cars or trains and the switch engine for the purpose of preventing the great weight of the locomotive from being placed on the apron or approaches of the transfer boat, *held*, that such trail car is not an "appurtenance" of the locomotive and tender within the meaning of the federal Boiler Inspection Act of February 17, 1911, and the amendments thereto (U. S. Comp. St. Sections 8631, 7639a, 8639b).

APPEAL from circuit court, Warren county.
Hon. E. L. BRIEN, Judge.

Suit by J. C. Ware against the Alabama & Vicksburg Railway Company. Judgment for plaintiff, and the defendant appeals. Reversed and remanded.

*R. H. & J. H. Thompson* and *Hirsh, Dent & Landau,* for appellant.

*Chaney & Ramsey* and *Anderson, Vollor & Kelly,* for appellee.

COOK, J., delivered the opinion of the court.

Appellee, J. C. Ware, instituted this suit in the circuit court of Warren county, Miss., seeking to recover damages for personal injuries alleged to have been received by him while employed by the Alabama & Vicksburg Railway Company, defendant, and from a judgment for plaintiff for ten thousand dollars, the railway company prosecuted this appeal.

The declaration alleged that plaintiff was injured by reason of the fact that he was thrown from a loose or defective footboard fastened to the side of what is called a "trail car" furnished by the defendant and used in switching cars on the incline near the Mississippi river at Vicksburg, and in placing cars on a transfer boat on the river. The defendant filed the plea of the general issue and notice of special matter under the general issue. In this notice the defendant set up that the plaintiff's injury, if any,

was the result of his own negligence, and also the result of one of the assumed risks under the federal Employer's Liability Acts (U. S. Comp. St. sections 8657-8665), for which the defendant is not liable, as both the plaintiff and defendant were engaged in interstate commerce at the time plaintiff was injured. Issue on the facts set up in the notice was joined in short by consent, except as to the fact that plaintiff and defendant were engaged in interstate commerce at the time plaintiff was injured, and this was admitted.

It appears from this record that the defendant's railroad line and yards in the city of Vicksburg extended down to the Mississippi river, and all cars on its line destined for points west of the Mississippi have to be carried down the incline to the river and there placed on the transfer boat of the Louisiana & Mississippi Railroad Transfer Company, and then taken across the river. These cars are moved with steam locomotives of great weight, and in order to keep the weight of these locomotives off the cradle and apron, or approaches to the transfer boat, the defendant designed and constructed what is called a trail car about the same width and length, and of the same general appearance, as an ordinary flat car. This trail car was equipped with the standard M. C. B. couplers and was coupled to the tender of the engine just as any other car. It was never loaded and was placed between the tender of the engine and that part of the train being moved onto the boat so that the locomotive was not required to be placed on the apron or approaches to the boat. It was especially designed and constructed by the defendant for this purpose, and these trail cars were equipped with long footboards on each side of the car, with handholds above, so that trainmen in assisting in the movement of cars on and off the boat, and in going up and down the incline, to and from the boat, could stand on the side of the trail car. This footboard on the side of this car was fastened to the car with a lag screw, and plaintiff testified that the footboard was loose, and that in the movement of the

train this loose footboard was caused to swing, thereby causing plaintiff to lose his balance, making it necessary for him to jump to the ground in an effort to save himself, and in jumping from this footboard he struck a switch stand and suffered the injuries complained of.

The first instruction granted the plaintiff placed the right of recovery under the federal Boiler Inspection Act, and the amendments thereto, under which plaintiff asserts an absolute right of recovery if the injury was the proximate result of some defect in the "entire locomotive and tender and all parts and appurtenances thereof," and also submitted to the jury the decision of the question of whether the trailer car was an appurtenance of the locomotive; this instruction being in the language following:

"The court instructs the jury for the plaintiff that the defendant had no right to supplant the rules and regulations of the Interstate Commerce Commission by adopting other rules and regulations that it may have believed to be just as safe, but that it was the absolute and unqualified duty of the defendant to be governed entirely by such rules and regulations; that, if you believe from the evidence a lag screw was used instead and place of a bolt and nut in fastening the footboard to the car in question, defendant is liable, provided you believe the footboard was loose, and plaintiff, by reason of its being loose, was injured, and it is your sworn duty to so find, provided you believe the trailer car in question was an appurtenance of the locomotive."

The granting of this instruction is assigned as error, and it is assailed upon several grounds, but chiefly on the ground that this trailer car was not an appurtenance of the locomotive within the purview of the said Boiler Inspection Act and that it was error to submit this question to the jury for decision, and in the argument counsel for appellee concedes that, if it is held that this car was not an appurtenance of the locomotive and tender, this case must be reversed.

The federal Boiler Inspection Act, which was enacted February 17, 1911, prescribes:

"Sec. 2. From and after the first day of July, nineteen hundred and eleven, it shall be unlawful for any common carrier, its officers or agents, subject to this act to use any locomotive engine propelled by steam power in moving interstate or foreign traffic unless the boiler of said locomotive and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put, that the same may be employed in the active service of such carrier in moving traffic without unnecessary peril to life or limb, and all boilers shall be inspected from time to time in accordance with the provisions of this act, and to be able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for." U. S. Comp. St. section 8631.

In 1915 this act was amended by Congress, the amendment providing:

"Section 1. That section two of the act entitled 'An act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their locomotives with safe and suitable boilers and appurtenances thereto,' approved February seventeenth, nineteen hundred and eleven, shall apply to and include the entire locomotive and tender and all parts and appurtenances thereof.

"Sec. 2. That the chief inspector and the two assistant chief inspectors, together with all the district inspectors, appointed under the act of February seventeenth, nineteen hundred and eleven, shall inspect and shall have the same powers and duties with respect to all the parts and appurtenances of the locomotive and tender that they now have with respect to the boiler of a locomotive and the appurtenances thereof, and the said act of February seventeenth, nineteen hundred and eleven, shall apply to and include the entire locomotive and tender and all their parts with the same force and effect as it now applies to locomotive boilers and their appurtenances. That upon the passage of this act all inspectors and applicants for the position of inspector shall be examined touching their qualifications

and fitness with respect to the additional duties imposed by this act." U. S. Comp. St. sections 8639a, 8639b.

The Interstate Commerce Commission, acting under the authority of these acts of Congress, has prescribed rules and regulations as to the manner in which locomotives, tenders, and all parts and appurtenances thereof shall be constructed, and among other things have prescribed the number, dimensions, location, and manner of application of footboards on steam locomotives used in switching service; these regulations prescribing that—

"Footboards shall be securely bolted to two (2) one (1) by four (4) inches metal brackets, provided footboard is not cut or notched at any point, and each bracket shall be securely bolted to buffer-beam, end-sill or tank-frame by not less than two (2) seven-eighths (7-8) inch bolts."

According to the testimony for plaintiff, which the jury by their verdict accepted as true, the footboards on the trailer car in question were fastened by lag screws, instead of bolts and nuts as prescribed by these rules and regulations of the Interstate Commerce Commission, and we do not understand that appellant contends that these footboards were constructed and fastened in accordance with these regulations; the sole contention on this point being that the trailer car was not a part of or appurtenance of the locomotive and tender, and therefore this regulation as to footboards on "locomotives used in switching service" has no application to this car.

The word "appurtenance" has a well-defined meaning, and in the connection in which it is used in this act its meaning seems clear, and we do not think that when Congress enacted the Boiler Inspection Act and explicitly included the entire locomotive and tender, and all their parts and appurtenances, it was the intention of the lawmakers, by the use of the word "appurtenance," to embrace within the terms of the act a specially designed and constructed car used for a particular purpose. It is said that since these cars were constructed for use only in this particular work, and it was necessary or convenient to use them in

this work of placing trains or cars on this transfer boat, for that reason they became a part of the equipment of, and an appurtenance of, the switch engine when it was engaged in this particular work; but the fact that these cars were necessary or useful in the particular work to be performed is not controlling. It appears from the evidence that upon occasions when these trailers were out of commission for repairs, ordinary flat cars were used in the performance of this work. Would an ordinary flat car taken from service on the road and temporarily used for this particular work become, for the time so used, an appurtenance of the locomotive? We think not, and we see no more reason for holding that a car of similar construction, which is used only for a particular purpose, is an appurtenance of the locomotive while being used for the purpose for which it is designed; that is, simply as an extension between the locomotive and the train to be moved.

There are numerous other assignments of error; but having reached the conclusion that the trailer car in question was not an appurtenance of the locomotive, and that it was reversible error to grant instruction No. 1, which submitted the decision of this question to the jury, and authorized a recovery for a violation of the rules and regulations of the Interstate Commerce Commission as promulgated under the authority of the Boiler Inspection Act, provided they found the trailer car was an appurtenance of the locomotive, it will be unnecessary to notice the other assignments.

For the error herein indicated, the judgment of the court below is reversed, and the cause remanded.

*Reversed and remanded.*